# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DESA LILLY RINALDI and<br>ROGER PETER RINALDI,<br><br>      Plaintiffs,<br><br>v.<br><br>HSBC BANK USA, N.A.,<br>WELLS FARGO BANK, N.A.,<br>WELLS FARGO ASSET SECURITIES<br>CORPORATION,<br>AMERICA'S SERVICING COMPANY,<br>LITCHFIELD CAVO, LLP,<br>BRAD A. MARKVART,<br>GRAY & ASSOCIATES, LLP,<br>WILLIAM N. FOSHAG,<br>DUNCAN C. DELHEY,<br>JAY J. PITNER, and BRIAN D. PERHACH,<br><br>      Defendants. | Case No. 13-CV-336-JPS |
| DESA LILLY RINALDI and<br>ROGER PETER RINALDI,<br><br>      Appellants,<br><br>v.<br><br>HSBC BANK USA, N.A., and<br>GRAY & ASSOCIATES, LLP,<br><br>      Appellees. | Case No. 13-CV-643-JPS<br><br><br>ORDER |

   The road to this point has been long and very windy, thanks in no small part to the obstinate and often confounding actions of the debtors, Desa and Roger Rinaldi ("the debtors"), and their attorney, Wendy Nora. Too much has occurred for the Court to offer a succinct statement of all that has come before. Suffice it to say that, after appearing before two separate courts in three separate proceedings, and repeatedly making the same arguments,

the debtors and their attorney have elected to press their cause in front of yet a third court.

The bankruptcy court issued a single opinion which included both final orders on core bankruptcy matters as well as proposed findings and conclusions of law on non-core matters. (Docket #1). The debtors appealed the final orders and objected to the proposed findings of fact and conclusions of law; the appeal and objections were docketed in two separate cases, which the Court consolidated. (Docket #5).

The Court now rules on both the objections and the appeal, adopting the bankruptcy judge's recommendations in the non-core proceedings and affirming her final orders on core matters.

1.  BACKGROUND

The history of this case is very complex, and is best grouped into three separate time periods. First, there was a state court foreclosure proceeding, filed by HSBC Bank ("HSBC"). Second, the debtors filed for bankruptcy, in which proceeding they objected to the mortgage claimed against them and took various actions to rid themselves of that debt. Finally, third, after the bankruptcy court issued its order and proposals, there is the immediate case. This consolidation of the debtors' objections and appeal has, itself, had a fair share of confusion and procedural hiccups. In an attempt to unravel the tangled threads holding this case together, the Court recounts the background in detail as follows.

1.1  State Actions

Mr. Rinaldi signed an adjustable rate mortgage on June 10, 2005, on behalf of the debtors. The mortgage was secured by the debtors' residence. Wells Fargo Bank ("Wells Fargo") held the note as mortgagee. In signing the note, Mr. Rinaldi agreed that Wells Fargo would be allowed to transfer the

note, and the debtors would be obligated to pay whoever was the holder of the note. Joan Mills, a Vice President of Wells Fargo signed an undated endorsement on the note stating "Without Recourse Pay to the Order of," followed by a blank space.

Wells Fargo eventually assigned the mortgage to HSBC. Thereafter, the debtors defaulted on the mortgage and, on February 3, 2009, HSBC filed a foreclosure action against them in Kenosha County Circuit Court.

The debtors counterclaimed against HSBC. The debtors argued that HSBC had not presented the proper assignments and allonges with the mortgage to establish their standing to take action against the debtors. The debtors also argued that the initiation of the mortgage transaction suffered from certain irregularities that should make it void, such as alteration of the loan application.

The Kenosha County Circuit Court did not believe that those counterclaims warranted relief, and thus, on January 26, 2010, dismissed them and further granted summary judgment to HSBC in the foreclosure action.

In the first of a series of bizarre legal strategy decisions, the debtors did not appeal that decision. Instead, they waited almost ten months to file a motion to vacate the Kenosha County Circuit Court's grant of summary judgment to HSBC. The circuit court denied that motion on January 6, 2011.

Having secured a judgment against the debtors in the foreclosure action, HSBC was entitled to foreclose upon the debtors' property, but HSBC did not do so. Instead, HSBC agreed to modify the terms of the debtors' loan. This agreement prevented foreclosure, altered the payments due under the loan, and called upon the Kenosha County Circuit Court to vacate its prior

grant of summary judgment. The circuit court did so, vacating its judgment so as to allow implementation of the modification agreement.

Apparently this bit of grace from HSBC was not enough to satisfy the debtors, though. Less than five months later, the debtors filed a new suit in Kenosha County Circuit Court against HSBC, Wells Fargo, and attorneys for those parties. In this new suit, the debtors alleged claims that were practically identical to the counterclaims they had previously raised against HSBC in the prior foreclosure action. (The circuit court, as previously mentioned, had dismissed those claims at the summary judgment stage, but the debtors re-alleged them in this newer action, because the circuit court had vacated its prior judgment.).

The defendants in this new case—HSBC, Wells Fargo, and several of their attorneys—moved to dismiss the new case and geared up to file supporting materials. However, before the defendants could take that action, the debtors (perhaps hearing the imminent death knell ringing for their claims) filed for Chapter 7 bankruptcy, automatically staying any further action in the Kenosha County Circuit Court.

1.2     Bankruptcy Action

The debtors filed their initial Chapter 7 bankruptcy petition on October 14, 2011, and later voluntarily converted that petition to Chapter 13 on March 21, 2012.

Predictably, HSBC filed its proof of claim based on the debtors' mortgage. In quick succession thereafter, the debtors filed an objection to that proof of claim and an adversary proceeding against: HSBC; Gray & Associates (HSBC's attorneys) and several individual attorneys working for Gray & Associates; Wells Fargo; and Litchfield Cavo (Wells Fargo's attorneys) and individuals working for Litchfield Cavo. In support of their

objection, the debtors alleged that, despite HSBC's submission of the mortgage note *admittedly signed by Mr. Rinaldi*, the endorsement of the note from Wells Fargo to HSBC was forged and fraudulent. In their adversary proceeding, the debtors alleged other causes of action, including fraud, abuse of legal process, violations of the Fair Debt Collection Practices Act, and tortious interference with economic opportunity. All of these arguments, in both the objection and the adversary proceeding, derived primarily from the debtors' assertions regarding the alleged issues with the mortgage note and transfer. Essentially, these were the same claims that the debtors had alleged in both of the Kenosha County Circuit Court actions. Among other things, the debtors alleged that the mortgage note was void due to: lack of consideration; that the assignments of the note were void for various reasons, including one being a forgery because it had not been recorded before bankruptcy; and, that the note was fabricated.

Gray & Associates, along with its attorneys William Foshag, Duncan Delhey, Jay Pitner, and Brian Perhach (collectively, the "Gray defendants"), moved to dismiss the debtors' adversary complaint on August 1, 2012. The remaining parties (collectively, the "Wells defendants") filed a separate motion to dismiss the same on August 21, 2012.

After those motions were filed, the debtors moved to amend their complaint in the adversary proceeding, on August 23, 2012. The bankruptcy court denied that motion in reference to the Gray defendants, finding that too much time had expired between the Gray defendants' motion to dismiss and the debtors' motion to amend. The bankruptcy court did allow the debtors to amend their complaint as to the Wells defendants, though.

Nonetheless, unhappy that they were unable to amend their complaint as to the Gray defendants, the debtors twice moved for

reconsideration. The bankruptcy court denied both of those motions. Thus, the debtors appealed, and this Court was assigned the appeal. (Case No. 12-CV-1065). The Court ultimately dismissed that appeal, concluding that there was not a final order that the debtors could have appealed. (Case No. 12-CV-1065, Docket #4, at 4).

While that appeal was pending, though, the debtors never requested a stay. Thus, the briefing went ahead on the motions to dismiss. The Wells defendants filed a supplemental motion to dismiss the debtors' complaint. The debtors responded and additionally moved to strike various exhibits submitted by the defendants.

The parties fully briefed the matters and, on March 22, 2013, the bankruptcy court issued its decision. (Docket #1). That decision was in the form of a consolidated memorandum decision, which included both proposed findings of fact and conclusions of law on claims that the bankruptcy court did not have authority to finally adjudicate and also final adjudicative orders on the defendants' motions to dismiss. Specifically, the bankruptcy court:

    1)    entered a final order allowing HSBC's proof of claim;

    2)    entered a final order rejecting the debtors' lien avoidance claims;

    3)    entered a final order rejecting the debtor's contentions that HSBC lacked standing to seek relief from the automatic stay imposed by the debtors' bankruptcy filing;

    4)    entered a final order denying the debtors' motion to disqualify the Gray defendants; and

    5)    entered proposed findings of fact and conclusions of law suggesting that the debtors' RICO, FDCPA, abuse of process, fraud, tortious interference, and breach of contract claims be dismissed.

(Docket #1, at 32–33).

### 1.3 Consolidated Objections and Appeal

Predictably, the debtors appealed the final orders (Case No. 13-CV-643) and objected to the bankruptcy court's proposed findings and conclusions (Bankruptcy Case No. 12-AP-2412, Docket #87). At the request of the debtors, the Court consolidated the two matters. (Docket #8). Thus, the Court now must review the entirety of the bankruptcy court's order to determine whether it should concur in the proposed findings and conclusions and further whether it should affirm the bankruptcy court's final orders.

After several extensions of time (Docket #10, #13), as well as some significant confusion regarding the debtors' failures to comply with standard bankruptcy procedure (Docket #17, #28), the Court has now received what it deems to be the parties briefs in this matter (Docket #11, #18, #20, #28, #29, #31). The matter is, therefore, ready to be addressed by the Court.

### 2. DISCUSSION

On appeal, the Court reviews the bankruptcy court's proposed findings of fact for clear error and its legal conclusions and answers to mixed questions of law and fact *de novo. Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009).

In what are deemed "non-core" proceedings, such as the RICO, FDCPA, abuse of process, fraud, tortious interference, and breach of contract claims in this case, "the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1); Fed. R. Bankr. P. 9033(d). The Court may

Case 2:13-cv-00336-JPS   Filed 10/31/13   Page 7 of 21   Document 32

accept, reject, or modify the bankruptcy court's proposed findings and conclusions, receive further evidence on them, or remand the matter to the bankruptcy judge. Fed. R. Bankr. P. 9033(d).

With those standards in mind, the Court turns to addressing the bankruptcy court's decision and the parties' arguments. The Court will address the debtors' appeal of final orders separately from their objections to the bankruptcy court's proposed findings and conclusions.

### 2.1 Appeal of Final Orders

As earlier noted, the debtors' consistent failure to follow the Federal Rules of Bankruptcy Procedure provides adequate reason for the Court to dismiss the debtors' appeal. The Court, therefore, dismisses the debtors' appeal on that basis. Nonetheless, in the balance of this order the Court will address seriatim each of the issues asserted by the debtors on appeal.

#### 2.1.1 Dismissal for Debtors' Failure to Follow Procedure

The defendants' first argument is that the Court must dismiss the debtors' appeal, due to their failure to designate the appeal or even to raise issues on appeal.

Rule 8006 of the Federal Rules of Bankruptcy Procedure requires that "within 14 days after filing the notice of appeal…the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented." Rule 8010(a)(1) requires that the appellants brief include "in the order here indicated": (A) a table of contents; (B) a statement of the basis for appellate jurisdiction; (C) a statement of the issues presented; (D) a statement of the case; (E) an argument; and (F) a short conclusion stating the relief sought.

The debtors' failed to comply with either of those procedural requirements. They did not serve the defendants with a designation of the

record or a statement of the issues they planned to raise on appeal. In fact, the defendants are the only parties to have designated any documents for purposes of this appeal. (Docket #30). Moreover, the debtors' appeal brief does not include a table of contents, a statement of the basis for appellate jurisdiction, a statement of the issues presented, or a statement of the case. Their brief is practically entirely composed of argument. These failures are troubling and created significant problems for the defendants, who were charged with responding to the debtors myriad and undeveloped claims without the assistance of a designated record or even a concise statement of the issues on appeal.

These significant lapses provide the Court with good reason to dismiss the appeal. *See, e.g.*, *In re Morrissey*, 349 F.3d 1187, 1189 (9th Cir. 2003) (affirming district court's summary affirmance of bankruptcy court order where appellant had failed to comply with Rule 8010); *In re Kloian*, 137 Fed. App'x 780, 782–83 (6th Cir. 2005) (relying on Rules 8006 and 8001(a) to justify dismissal on the basis of appellant failure to comply with procedural rules); *Whitetail Woods, LLC v. CIBM*, 2013 WL 4796139, at *2 (E.D. Wis. Oct. 9, 2012) (dismissing case, under Rules 8001 and 8006); *In re Bulic*, 997 F.2d 299, 302 (7th Cir. 1993) (affirming district court's dismissal of bankruptcy appeal for failure to timely file designation); *In re ANR-Advance Transp. Co.*, 73 Fed. App'x 183, 185 ("It is within a district court's sound discretion to dismiss an appeal from a bankruptcy court order when the appellant negligently fails to comply with procedural rules requiring him to file a timely brief and designate the record.") (citing *In re Scheri*, 51 F.3d 71, 73–74 (7th Cir. 1995); *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994); *Bulic*, 997 F.2d at 301–02). Dismissal for a Rule 8006 violation is an appropriate exercise of the Court's discretion when there is a showing of "bad faith, negligence, or indifference."

*E.g. Kloian*, 137 Fed. App'x at 783 (citing *In re Winner Corp.*, 632 F.2d 658, 661 (6th Cir. 1980)). At the very least, one of the latter two of those deficiencies is present here: the debtors' repeated failure to comply with bankruptcy procedure, both in this Court and in the bankruptcy court, is not mitigated by any showing of good cause, and is most assuredly the product of negligence or indifference. The Court has considered all of the facts before it and cannot possibly deem the debtors' repeated failures to be "excusable," seeing as those failures negatively impacted the defendants' ability to respond to the appeal, confused the judicial proceedings, were not justified by any good reason, and were entirely within the debtors' control. *Bulic*, 997 F.2d at 302 (citing *Pioneer Investment Serv's Co. v. Brunswick Assocs., L.P.*, 507 U.S. 380 1993) (for the standards of excusable neglect in affirming district court's dismissal of bankruptcy appeal for procedural failures). Dismissal is, therefore, appropriate.

Moreover, the debtors' failure to set forth their statement of issues on appeal resulted in waiver of those issues. *See, e.g.*, *In re Am. Cartage, Inc.*, 656 F.3d 82, 90 (1st Cir. 2011) (where there are no "exceptional circumstances, failure to comply with Rule 8006 waives the omitted issue on appeal."); *In re GGM, P.C.*, 165 F.3d 1026, 1032 (5th Cir. 1999); *In re Freeman*, 956 F.2d 252, 255 (11th Cir. 1992). *But see In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*, 104 F.3d 1147, 1148 (9th Cir.1997) (*per curiam*).[1] Given that the debtors failed to set forth *any* issues as required by Rule 8010, they have waived *all* issues.

---

[1]The Seventh Circuit has not yet addressed this exact issue. However, the Court agrees with the district court in *Peoples Nat'l Bank, N.A. v. Jones*, which found the First, Fifth, and Eleventh Circuit precedent to be compelling and consistent with other Seventh Circuit law. 482 B.R. 257, 260, *overruled on other grounds at* 719 F.3d 608 (*citing Broaddus v. Shields*, 665 F.3d 846, 853 (7th Cir. 2011), *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010); *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008)).

This is particularly appropriate in this case, where there are no special circumstances and the debtors' failure was, at best, based on inexcusable neglect.

### 2.1.2   Substantive Analysis of Appeals Issues

Even if the Court should not have procedurally dismissed the debtors' appeal, it would not reach any different conclusion on the merits. The bankruptcy court's final orders were not in error, and the Court would not overturn them on appeal even if it were required to reach their merits. In short, because the debtors failed to provide a cogent statement of the issues on appeal and also provided briefs that are largely unintelligible. The Court addresses the substance of the debtors' issues on appeal briefly, if only to demonstrate the lack of merit in the debtors' appeal of the bankruptcy court's final orders.

### 2.1.2.1   HSBC's Note is Valid and Enforceable

The bankruptcy court concluded that the note in question is a valid and enforceable negotiable instrument under Wisconsin law. (Docket #1, at 13–14). It determined that the note: (1) contains a written promise to pay a fixed amount of money; (2) is payable at a definite time; and (3) does not state any other undertaking. (Docket #1, at 13). Those facts make the note a negotiable instrument under Wis. Stat. § 403.112. (Docket #1, at 14). Moreover, that status is not affected by the fact that the note contained a variable rate, because Wis. Stat. § 403.112 allows for interest to be either fixed or variable. (Docket #1, at 14).

Mr. Rinaldi did not dispute that his signature on the note is genuine, and, therefore, the bankruptcy court was correct to determine that the debtors could not challenge it. *In re Edwards*, 2011 WL 6754073, at *6 (Bankr. E.D. Wis. Dec. 23, 2011); Wis. Stat. § 403.308(1). Moreover, the note contains

Case 2:13-cv-00336-JPS   Filed 10/31/13   Page 11 of 21   Document 32

an endorsement in blank, which is permissible under the Wisconsin statutes, and entitles HSBC to enforce the note against the debtors, regardless of the lack of date, simply on the basis of HSBC bearing the note. *Edwards*, 2011 WL 6754073, at *6; Wis. Stat. § 403.305.

For these reasons, the bankruptcy court's determination that the note is valid and enforceable, and entitled HSBC to file the claim to enforce the note, was entirely correct and appropriate. There is no basis to reverse this aspect of the bankruptcy court's order.

### 2.1.2.2 Mortgage Assignments Do Not Invalidate Proof of Claim

The Court must also uphold the next portion of the bankruptcy court's decision. In it, the bankruptcy court determined that the debtors could not challenge the various assignments that their mortgage went through as a way of escaping liability from the mortgage.

Nothing prevents the assignment of mortgages from one debtholder to another, and that assignment does not implicate the debtors' rights. *Edwards*, 2011 WL 6754073, at *7–*8 (citing doctrine of equitable assignment). Regardless of any assignment, the debtor must only pay its obligations once, and must do so to the holder of the note. *Id.* The state court found that HSBC is the holder of the note in question and entered a judgment of foreclosure in HSBC's favor. With that fact established, it is clear that HSBC is entitled to enforce the mortgage. Any potential irregularities in the assignment process were addressed by the state court, which had before it several assignment documents, and which concluded that the assignment passed muster. Moreover, the bankruptcy court was also correct in concluding that any issues in the agreements between the banks assigning the mortgages do not permit the debtors to challenge the validity of the note. Docket #1, at 16–17

(citing *In re Sanford*, 2012 WL 6012785, at *1 n. 2 (E.D. Pa. Dec. 3, 2012)); *see also In re Walker*, 466 B.R. 271, 285-86 (Bankr. E.D. Pa. 2012) (noting the general consensus that debtors lack standing to challenge an allegedly-defective assignment when they cannot establish an injury in fact stemming from that assignment, as is the case here) (citing *Doe ex rel. Doe v. Lower Merion School District*, 665 F.3d 524, 542 (3d Cir. 2011); *In re Global Indus. Techs.*, 645 F.3d 201, 210 (3d Cir. 2011); *Livonia Prop. Holdings, L.L.C. v. 12840–12976 Farmington Rd. Holdings, L.L.C.*, 717 F. Supp. 2d 724, 737 (E.D. Mich. 2010), *aff'd* 399 Fed. App'x 97 (6th Cir. 2010); *Nicolls Pointing Coulson, Ltd. v. Transp. Underwriters of La., Inc.*, 777 F. Supp. 493 (E.D.La.1991)).

The Court is satisfied that the bankruptcy court correctly determined that the mortgage assignments did not affect HSBC's ability to file the proof of claim, and affirms that portion of the bankruptcy court's order.

### 2.1.2.3    HSBC Has Standing to Seek Relief from Stay

The bankruptcy court determined that HSBC, by virtue of its being a holder of the note in question, had standing to challenge the automatic stay imposed on the pending Kenosha County case. This was also correct.

The question of whether to lift a stay is limited to "whether there is a *colorable* claim of a lien on a property." *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1234 (7th Cir. 1990). Clearly, here, where HSBC has been found the assigned holder of a mortgage, it should be allowed to assert its claim—which is far more than colorable—by seeking relief from a stay.

The bankruptcy court's conclusion on this issue was also correct, and the Court hereby affirms it.

### 2.2    Review of Objections to Proposed Findings and Conclusions

The bankruptcy court also issued proposed findings and conclusions suggesting that this Court dismiss the debtors' RICO, abuse of process,

FDCPA, fraud, tortious interference, and breach of contract claims, which they had asserted in their adversary proceeding. The Court adopts each of those proposed conclusions.

As with practically every one of their submissions in this case, the debtors have skirted the line of noncompliance with the Federal Rules of Bankruptcy Procedure. First, they filed their objections one day late without obtaining leave of court to do so. Second, their submission in that regard is so convoluted that the Court is unable to discern whether it complies with the requirements of Rule 9033. That Rule requires that the objecting party "identify the specific proposed findings or conclusions objected to and state the grounds for such objections." The debtors' submission is hardly specific; it is much more an unfocused, stream-of-consciousness-style recitation of general grievances the debtors have asserted in various forms since the origination of this litigation in state court. Setting aside those issues, the Court nonetheless finds that, on the merits, it must adopt the bankruptcy court's proposals.

### 2.2.1 RICO Claim

The Court adopts the bankruptcy court's proposed conclusion that the debtors' RICO claim should be dismissed.

To begin, the bankruptcy court was no doubt correct that this claim is time-barred. The debtors do not make clear when any alleged RICO violation occurred, but have claimed that Wells Fargo "defraud[ed] homeowners into signing documents which were the basis for obtaining financing from the sale of certificates of beneficial interest in the purported REMIC Trust under false pretenses to both investors and the homeowners." Thus, this claim seems to derive from alleged activities that prompted Mr. Rinaldi to sign the

Case 2:13-cv-00336-JPS   Filed 10/31/13   Page 14 of 21   Document 32

mortgage. That execution occurred in 2005, and is likely time-barred. Moreover, the Rinaldis never objected to that proposed conclusion.

Additionally, RICO activities require a pattern of racketeering activity. The record before this court—such as it is—suggests there was only one incident, here.

In addition to those well-supported findings, the bankruptcy court found that the debtors' RICO claims could not withstand legal scrutiny. This is certainly true and the Court accepts this proposed finding to dismiss the RICO claim. RICO requires that the allegations "go beyond a showing of fraud and state the time, place, and content of the alleged mail and wire communication perpetrating the fraud." *United States Textiles, Inc. v Anheuser-Busch Co.*, 911 F.2d 1261, 1268 n.6 (7th Cir. 1990). Simply put, none of the debtors' allegations constitute fraud: any dealings between mortgage companies to transfer the debtors' note has no effect on the debtors' obligation to repay that note or their responsibilities thereunder; the state court found that the mortgage documents were valid; and any statements made by attorneys in various court proceedings were true and correct. Moreover, the debtors have not identified the time, place, or content of any allegedly fraudulent communications nor have they identified any perpetrators who made those communications. Finally, the Court points out what is the most obvious issue with all of this: the debtors do not claim any injury in fact. They are still living in their residence. They do not owe an additional amount of money on that residence, aside from the amounts set forth in the mortgage, which they agreed to pay.

For all of these reasons, the Court adopts the bankruptcy court's proposal that the debtors' RICO claim be dismissed.

### 2.2.2 Abuse of Process Claim

The defendants' abuse of process claim is utterly without merit. This claim requires that a person "use[] a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed." *Brownsell v. Klawitter*, 102 Wis. 2d 108, 114, 306 N.W.2d 41 (1981). Here, the defendants all used a legal process to foreclose upon the debtors' residence when the debtors stopped paying the bills as required. That is the precise purpose for which the process of a foreclosure action was designed. The defendants did not foreclose upon the home to annoy or harass the defendants. They simply exercised a legal right that accrued to them as a result of the debtors' default.

For this reason, the Court adopts the bankruptcy court's recommendation that the abuse of process claim be dismissed.

### 2.2.3 FDCPA Claim

The debtors' Fair Debt Collection Practices Act (15 U.S.C. §§ 1692–1692p, "FDCPA") claim is similarly without merit. It is generally understood that enforcement of a security interest falls outside of the contours of the FDCPA. *E.g. Kaltenbach v. Richards*, 464 F.3d 524, 527 n.3 (5th Cir. 2006); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004). Thus, the bankruptcy court was correct that the defendants are not "debt collectors," and, therefore, cannot be liable under the FDCPA.

For this reason, the Court adopts the bankruptcy court's proposal that the FDCPA claim be dismissed.

### 2.2.4 Fraud Claims

The debtors' fraud claims fail for reasons similar to the RICO claim. The claims are not adequately pled, as they largely rely on "information and belief," which is not adequate to plead fraud claims, which must be plead

with particularity. Fed. R. Bankr. P. 7009(b); *In re Bungert*, 315 B.R. 735, 740 (Bankr. E.D. Wis. 2004). The claims are also likely time-barred because the alleged fraud, if any, occurred in 2005. The state court already found that there was no fraud, meaning that under the doctrine of issue preclusion, the Court must also find no fraud. *See Federated Dept. Stores v. Moitie*, 452 U.S. 394, 398 (1981). Any claims against attorneys will not lie, because the attorneys did not make fraudulent statements (their statements being cloaked by the litigation privilege).

In all, just as with every other claim asserted by the debtors, the Court agrees with the bankruptcy court and will adopt the bankruptcy court's recommendation that the debtors' fraud claims be dismissed.

### 2.2.5    Tortious Interference and Breach of Contract

The debtors' tortious interference and breach of contract claims are also time-barred.[2] The tortious interference claim is subject to a statute of limitations of two years. *Mirbeau of Geneva Lake, LLC v. City of Lake Geneva*, 746 F. Supp. 2d 1000 (E.D. Wis. 2010) (noting that tortious interference is governed by Wis. Stat. § 893.57, and therefore the limitations period is two years for injuries occurring before February 25, 2010). The debtors' tortious interference allegations are not clear; however, the bankruptcy judge is correct that it is impossible that they would not be time-barred. There are not any activities that occurred after 2009 that would constitute tortious interference. Thus, by the time the debtors filed their bankruptcy petition in 2011, the tortious interference statute of limitations had clearly run. Likewise, the six year statute of limitations on breach of contract actions (Wis. Stat.

---

[2] This does not mention the fact that both of these claims are on extremely tenuous footing on their merits, as well.

Case 2:13-cv-00336-JPS   Filed 10/31/13   Page 17 of 21   Document 32

§ 893.43) ran in 2011, as the debtors do not allege that the defendants engaged in any breach after the assignment of the mortgage to HSBC.

Again, the Court adopts the bankruptcy court's proposal that the debtors' tortious interference and breach of contract claims be dismissed.

### 2.3 Additional Possible Grounds for Relief

There are, quite frankly, too many problems with the debtors' arguments for the Court to be certain that it has dealt with each of the potential grounds for relief. The briefs are almost unintelligible. Essentially, they are an attempt to throw absolutely anything and everything at the wall in the hopes that something might stick. The Court has attempted to unravel the arguments by walking through each portion of the bankruptcy court's decision. Having found no issue with any portion of the bankruptcy court's decision, the Court finds that there is no basis on which it should refuse to adopt or reverse that decision.

However, the Court briefly addresses some additional arguments that the debtors have made.

There was no need for the bankruptcy court to have held an evidentiary hearing. The bankruptcy court had discretion in determining whether to hold such a hearing, *In re Nicholson*, 435 B.R. 622, 635–36 (9th Cir. 2010); 11 U.S.C. § 102(1)(A), and the Court is unable to find that a hearing on the validity of the note was at all necessary. By virtue of the fact that it was signed and filed, the proof of claim is *prima facie* evidence of its validity, Fed. R. Bankr. P. 3001(f), and the debtors' totally unsupported allegations to contest that validity were not enough to create the need for an evidentiary hearing. *In re Schmid*, 2013 WL 1755550, at *11–*12 (W.D. Bankr. 2013).

The debtors alleged certain claims under the Wisconsin Commercial Code for the first time. Those claims were not presented below, and thus they

Case 2:13-cv-00336-JPS   Filed 10/31/13   Page 18 of 21   Document 32

are not preserved on appeal and are appropriately disregarded. Moreover, they are entirely irrelevant to this case.

Finally, the bankruptcy court's refusal to allow the debtors to amend their complaint against the Gray defendants was appropriate. The debtors failed to timely file those amendments, and the bankruptcy court appropriately exercised its discretion to preclude further attempts at amendment. Moreover, the amendment would have been totally irrelevant, as the bankruptcy court would have correctly dismissed any additional claims against the Gray defendants, just as it had against the others.

To the extent that the debtors might have raised some additional arguments not addressed by the Court (and this is possible, given the fact that the debtors' briefs are so confusing), the Court simply notes that it was unable to locate the substance of those arguments in the debtors' briefs.

3.    CONCLUSION

For all of these reasons, the Court affirms those portions of the bankruptcy court's decision that constituted final orders and adopts the remainder of that decision's proposed findings of fact and conclusions of law.

Finally, the Court notes that there are motions for sanctions, filed by the defendants, pending before the bankruptcy court. (Case No. 12-AP-2412, at Docket #82, #83). The Court notes that, were those motions not pending, it likely would *sua sponte* issue an award of sanctions against the debtors. Their activity has quite obviously been vexatious and time- and resource-consuming; but, more concerning is the fact that their submissions to the Court are nigh-unintelligible. The Court has done its best to piece together their arguments from the submitted documents, but—much like the defendants—has found much difficulty in pulling together the pieces. This gives the Court pause. Seeing as the debtors' claims are generally meritless,

Case 2:13-cv-00336-JPS   Filed 10/31/13   Page 19 of 21   Document 32

the Court is concerned that the debtors are simply attempting to further stay the defendants' foreclosure of their home. In that case, the abuse of process charges alleged by the debtors against the defendants would actually lie much more appropriately against the plaintiffs. Of course, there is little evidence of this fact, but seeing that the debtors' appeal and objections lacked any arguable basis, failed to comply with this Court's local rules, and was largely unintelligible, the Court is searching for an answer as to how the debtors and their counsel anticipated this case proceeding. In the end, there is no motion for sanctions before this Court, and a majority of the debtors' questionable activities occurred in the bankruptcy court. The Court, therefore, believes that the bankruptcy court is in the better position to award sanctions, if appropriate, and will leave the question to the bankruptcy court. The debtors are hereby warned, however, that they will find themselves in very deep trouble if additional meritless filings find their way to this Court (seeing as this Court has already had the responsibility of dealing with their all-but-frivolous filings in Case No. 12-CV-1065) and may very well result in significant sanctions.

The Court also notes that it will deny the debtors' motion to compel the bankruptcy court to transmit the appeal record (Docket #17), because it was the debtors' failure to designate the record on appeal that caused the failure to transmit the record.

Accordingly,

IT IS ORDERED that, insofar as the bankruptcy court entered final orders in its memorandum decision (Docket #1), those orders be and the same are hereby AFFIRMED;

IT IS FURTHER ORDERED that, insofar as the bankruptcy court issued proposed findings of fact and conclusions of law in its memorandum decision (Docket #1), those proposals be and the same are hereby ADOPTED, and the debtors' various claims in the adversary proceedings that were not finally adjudicated by the bankruptcy court be and the same are hereby DISMISSED with prejudice, consistent with the proposals of the bankruptcy court and the Court's foregoing discussion; and

IT IS FURTHER ORDERED that the debtors' motion to compel the bankruptcy court to transmit the record on appeal (Docket #17) be and the same is hereby DENIED.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of October, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Case 2:13-cv-00336-JPS   Filed 10/31/13   Page 21 of 21   Document 32